**AFFIDAVIT**

I, Brandon Burnham, being duly sworn, depose and state the following:

**INTRODUCTION**

1.	I am a Special Agent of the Drug Enforcement Administration (DEA), assigned to the Detroit Field Division, Columbus District Office. As such, I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18 United States Code, Section 2516(1). During this time, your affiant has accumulated the following training and experience:

a.	I graduated from the DEA Academy located in Quantico, Virginia in 2024. I received approximately 16 weeks of specialized narcotics related training. The training included controlled substances identification, narcotics related investigative techniques, interview and interrogation training, preparation of search warrants, tactical application of narcotics enforcement, surveillance and electronic monitoring techniques, and money laundering investigations.

b.	As a DEA agent, I have participated in the execution of search warrants at residences of narcotics traffickers, safe houses, and have participated in several search warrants and investigations for drug related offenses.

c.	As a DEA agent, I have participated in investigations targeting individuals and organizations trafficking cocaine and fentanyl, and its analogues, methamphetamine and other controlled substances as defined in 21 U.S.C. § 801. I know that these are controlled substances under 21 U.S.C. § 801.

d.	During my law enforcement career, I have had experience in debriefing defendants, interviewing participating witnesses, cooperating individuals, and

other persons who have personal knowledge and experience regarding the amassing, spending, transportation, distribution and concealment of records and proceeds of trafficking in controlled substances. Before joining DEA, I was a police officer in the City of Utica, New York, City of Fort Wayne, Indiana and Town of Camillus, New York for approximately a total of seven years. During my career as a Police Officer, I have participated in numerous narcotics investigations, narcotics possession and search warrants.

2. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement officers. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

3. This affidavit is made in support of the issuance of a federal complaint and arrest warrant for the following two individuals for committing a violation of Title 21, United States Code, Section 846, Conspiracy to Possess with the Intent to Distribute 5 Kilograms or more of Cocaine, a Schedule II controlled substance:

    a. **Durian Randell WILLIAMS**, and

    b. **Robert Jamel JOE**.

My knowledge of this investigation is based upon my own personal observations, as well as the observations and investigations conducted by other law enforcement officers and investigators concerning the facts and circumstances involved in the subject investigation. I have not included in this Affidavit all the facts known to me, but only that information sufficient to establish probable cause to believe that WILLIAMS and JOE committed the above offense.

## SUMMARY OF BACKGROUND AND PROBABLE CAUSE

4. In February of 2025, investigators from the DEA Cincinnati District Office requested assistance from the DEA Columbus District Office (CDO) Task Force Group 1 (TFG1) in reference to a target traveling to Columbus, Ohio for drug-related activity. During surveillance of that target, DEA Columbus followed the target to the address of 5225 Bluestem Lane, Groveport, Ohio, 43125.

5. On or about February 24, 2025, investigators established surveillance at 5225 Bluestem Lane, Groveport, Ohio. An individual identified for purposes of this affidavit as "Subject 1", but whose actual identity is known by your Affiant, was observed parking in the driveway of 5225 Bluestem Lane and entered the residence. Based upon my review of his/her criminal history, Subject 1 is a known drug offender in the Columbus, Ohio area. DEA Columbus observed the target, later identified as Durian Randell **WILLIAMS ("WILLIAMS"),** arrive at 5225 Bluestem Lane approximately 40 minutes after Subject 1 arrived in a black Ford Explorer, which returned to a rental company. **WILLIAMS** has a criminal history in the state of Texas for felony drug related charges. Investigators observed **WILLIAMS** back up the Ford Explorer into the driveway and retrieve a duffle bag out of the trunk and placed it into the garage. **WILLIAMS** then parked the Ford Explorer on the street near 5225 Bluestem Lane and walked into the garage of said residence. **WILLIAMS** and Subject 1 were inside 5225 Bluestem Lane for approximately thirty minutes. **WILLIAMS** and Subject 1 exited 5225 Bluestem Lane together and **WILLIAMS** was pushing a suitcase. **WILLIAMS** placed the suitcase in the trunk of the Ford Explorer and entered the vehicle. Subject 1 entered the black Audi and departed the residence at the same time as **WILLIAMS**. Investigators continued surveillance of **WILLIAMS** in the black Ford Explorer and observed **WILLIAMS** abruptly pull over to the shoulder on Interstate 270 northbound for no apparent reason. Investigators know that this type of driving behavior by **WILLIAMS** is utilized by drug traffickers in an attempt to evade/detect law enforcement. **WILLIAMS** continued to travel to John Glenn International Airport, located at

4600 International Gateway, Columbus, Ohio. **WILLIAMS** parked the Ford Explorer in the passenger pick-up lane and exited the vehicle to retrieve the suitcase from the trunk and entered inside the airport. Investigators observed, through airport video footage, **WILLIAMS** check the suitcase at the United Airline ticket counter. Law enforcement confirmed that the luggage was ticketed for United Airline flight UA6031 destined for Houston, Texas, in the name of **WILLIAMS**. **WILLIAMS** then departed John Glenn International Airport in the Ford Explorer and did not board the United flight to Houston, Texas.

6. Based on my training and experience I know that checking luggage on a flight without boarding said flight, also known as a "Ghost bag", is common behavior of drug traffickers to transport drugs and/or drug proceeds. Based on Subject 1's criminal history involving the possession of drugs, investigators believe that **WILLIAMS** met with Subject 1 to traffic drugs and/or drug proceeds through the John Glenn International Airport in Columbus, Ohio.

7. Throughout the course of the investigation, a 'flight watch' was requested on **WILLIAMS** by DEA through several airlines, and investigators noted that **WILLIAMS** booked multiple flights from Houston, Texas to Cleveland, Ohio. On or about April 4, 2025, **WILLIAMS** booked a United Airlines flight from Houston, Texas to Cleveland, Ohio and then booked a return flight from Columbus, Ohio to Houston, Texas on or about April 5, 2025. Per the itinerary from United Airlines, **WILLIAMS** checked in two pieces of luggage.

8. On or about April 10, 2025, a State of Ohio Court Order was signed by Honorable Judge R. Brown in the Franklin County Court of Common Pleas for geo-location data of **WILLIAMS'** cellular device. The phone number for **WILLIAMS** was obtained via administrative subpoena to United Airlines.

9. On or about April 22, 2025, a 'flight watch' notification was received from United Airlines regarding **WILLIAMS** booking a flight from Houston, Texas destined to Cincinnati, Ohio. DEA Cincinnati airport agents/task force officers (TFO's) were contacted who advised that

**WILLIAMS** cancelled the United Airlines flight for that day and rebooked a second flight on Delta Airlines for the same day from Houston, Texas to Cincinnati, Ohio. The arrival time for the Delta flight was approximately 4:00p.m.  DEA Cincinnati airport agents/TFO's established surveillance and observed **WILLIAMS** arrive at the Cincinnati, Ohio airport and retrieve luggage where **WILLIAMS** then waited to be picked up by an unknown male, later identified as Robert Jamel **JOE**, in a silver Ford F-150 rental vehicle bearing Texas license plate WDC9433.

10. Avis Budget Group was contacted through the law enforcement portal, which revealed Robert Jamel **JOE** as the renter of the Ford F-150 on the prior day, April 21, 2025, at approximately 9:00 p.m. A search of nationwide traffic cameras regarding Texas license plate WDC9433 showed that the Ford F-150 was observed on multiple cameras traveling from Houston, Texas to Cincinnati, Ohio through the dates of April 21, 2025, and April 22, 2025. According to open-source database research, it takes approximately 16 hours to travel from Houston, Texas to Cincinnati, Ohio, without stopping.

11. After **WILLAMS** and **JOE** departed from the airport, investigators observed the geo-location data of **WILLIAMS** traveling north on Interstate 71 from Cincinnati, Ohio airport towards the Columbus, Ohio area. Investigators established surveillance and observed the Ford F-150 traveling northbound on Interstate 71 near Route 665. Ohio State Highway Patrol (OHSP) conducted a probable cause traffic stop of the Ford F-150 on Interstate 71 near the Hoover Road overpass in Grove City, Ohio and identified **JOE** as the driver and **WILLIAMS** as the front seat passenger. Franklin County Sheriff's Office (FCSO) K9 unit deployed a drug-sniffing K-9 to conduct a free-air sniff of the vehicle. The K-9 gave a positive alert to the odor of drugs emerging from the vehicle. As a result, OHSP and FCSO deputy conducted a probable cause search of the Ford F-150. During the search, the Trooper and Deputy located from the bed of the truck, nine (9) 'brick shaped' packages concealed in a tarp – each package containing a white powdery substance, which later field tested positive for cocaine. **WILLIAMS** and **JOE** were detained and transported to the DEA CDO. CDO investigators noted that the bricks were packaged in a manner

5

consistent with kilogram quantities of cocaine -- each tightly wrapped with plastic and/or wrapped with tape, along with many of them being vacuum-sealed and marked with writing. The approximate gross grams of the suspected cocaine were found to be 10,110 grams or 10.11 kilograms. Based on my training and experience, I am aware that the quantity of cocaine recovered is a distribution quantity.

12. CDO investigators advised **WILLIAMS** and **JOE** of their Miranda Rights and both declined the interview to be audio or video recorded. **WILLIAMS** and **JOE** were interviewed separately, and both requested a lawyer to be present. **WILLIAMS** and **JOE** were then transported to the Franklin County Sheriff's Office Jail.

## CONCLUSION

13. Based upon my training, experience and my review of the evidence gathered by agents and other investigators assigned to this investigation, there is probable cause to believe that beginning on an exact date unknown, but at least by April 21, 2025, and continuing until on or about April 22, 2025, in the Southern District of Ohio and elsewhere, **WILLIAMS** and **JOE** did knowingly and intentionally combine, conspire, confederate, and agree with each other, to distribute and possess with the intent to distribute five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine, its salts, optical and geometric isomers, and salts of isomers, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(A)(ii), all in violation of Title 21, United States Code, Section 846.

*Brandon Burnham*
_____
Brandon Burnham
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me
this __23__ day of April 2025.

_____
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE